**STATE of Maine**

v.

**Merle CAMPBELL.**

Supreme Judicial Court of Maine.

Jan. 28, 1974.

tion of 34 M.R.S.A. § 710[1] (Escape from the Maine State Prison).

The indictment charges:

"That, on or about, the Twelfth day of July, 1972, at Thomaston, County of Knox and State of Maine, Merle B. Campbell, feloniously did commit a criminal offense, to wit, while undergoing lawful imprisonment in the Maine State Prison, in pursuance of the sentence of James L. Reid, Justice of the Kennebec County Superior Court at Its March, 1970 Term for the offense of Breaking and Entering with Intent to commit Larceny, for a term of not less than two years and not more than four years, which sentence was then and there in full force and effect, whereupon, he, the said Merle B. Campbell, *did then and there wilfully and unlawfully fail to return to the Maine State Prison and from and out of said Maine State Prison did escape and go at large.*" (Emphasis supplied.)

Galen P. LaGassey, Co. Atty., Rockland, for plaintiff.

Collins & Crandall by Wayne R. Crandall, Rockland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Merle Campbell has appealed from his conviction following a jury waived trial in which he was charged, by indictment of the Knox County grand jury, with a viola-

Appellant relies upon the following points on his appeal:

"1. The Court erred in failing to dismiss the indictment upon motion of Defendant because:

a. The indictment does not state facts sufficient to constitute an offense under Maine Law because it does not allege a lawful commitment of Defendant to the Maine State Prison;

b. The Court in Knox County does not have venue or jurisdiction to hear the Complaint since the alleged offense took place outside of Knox County;

1. "710. Assaulting officers; escape; prosecution

If a convict sentenced to the State Prison for life or for a limited term of years or transferred thereto from the Men's Correctional Center under section 808–A or committed thereto for safekeeping under Title 15, section 453, assaults any officer or other person employed in the government thereof, or breaks or escapes therefrom, or forcibly attempts to do so, he may be punished by confinement to hard labor for any term of years, to commence after the completion of his former sentence or upon termination of such sentence by the State Probation and Parole Board; said termination shall not take place sooner than the expiration of the parole eligibility hearing date applicable to his former sentence. The warden shall certify the fact of a violation of this section to the county attorney for the County of Knox, who shall prosecute such convict therefor."

c. The indictment is duplicative and fails to advise counsel of the charge against Defendant because counsel cannot reasonably ascertain whether Defendant is charged with failure to return to Maine State Prison on the date alleged or if the Defendant is charged with escaping from and out of the Maine State Prison.

2. The evidence is insufficient to establish a violation of M.R.S.A. Title 34 § 710 because:

a. There is no evidence that the warden has certified the fact of a violation of said section to the County Attorney of the County of Knox;

b. There is no evidence that the said Defendant willfully failed to return to the Maine State Prison;

c. There is no evidence that the Defendant escaped from the Maine State Prison or the Men's Correctional Center.

3. The Court erred in admitting evidence of the events which took place in Oakland, Maine on July 12, 1972 as such evidence was irrelevant and incompetent to prove the offense charged in the indictment.

4. The Court erred in admitting evidence on redirect examination of Leon Williams concerning the obligation of Defendant to return to the Maine State Prison.

5. The Court erred in finding upon the evidence that Defendant was in lawful custody at the time of the alleged escape."

We deny the appeal.

## FACTS

Appellant had entered a guilty plea to an indictment alleging a violation of 17 M.R.S.A. § 754 (Breaking and entering with in-

tent to commit larceny) and, on March 17, 1970, had been sentenced by a Justice of the Superior Court in Kennebec County to imprisonment in the Maine State Prison "for not less than two years and not more than four years." On the same day he was committed to this institution and it was while serving the sentence thus imposed that the alleged escape occurred.

On July 12, 1972, appellant requested, and was granted, permission to visit his mother in Oakland but on condition that he be escorted by a prison official and return to the Maine State Prison the same day. Pursuant thereto, appellant and the guard journeyed to Oakland (which is in Kennebec County) where the Campbell family lived. During the course of this visit the appellant requested, and was allowed, to leave the house, which lacked plumbing facilities, and go a few feet beyond to an out-building with toilet facilities. On appellant's failure to return, the guard inspected this out-building and found a back door from which one could proceed directly into a wooded area. A preliminary search of the area failed to reveal appellant's presence and the matter was promptly reported to various police agencies. The search was continued the following day without results. However, on July 14, 1972, appellant was returned by a prison official to the prison from the Waterville City Jail.[2] This prosecution ensued.

We next consider the issues arising from the denial of the motion to dismiss the indictment.

*Point 1(a)*

Appellant has not briefed nor argued the assertion, reserved in his statement of points on appeal, that the indictment was defective because it failed to "allege a lawful commitment" to the Maine State Prison. We consider this point to have been abandoned.[3] State v. Harriman, 259 A.2d 752 (Me.1969).

2. The record does not disclose the circumstances leading to the apprehension of the appellant at the city jail.

3. We note the allegation that appellant was "undergoing lawful imprisonment in the Maine State Prison, in pursuance of the sen-

## Point 1(b) (Venue)

■ Since the appellant has advanced no argument which raised any issue that the Superior Court lacked basic authority to deal with this case, we deem that his use of the expression "venue or jurisdiction" was inadvertent and, in fact, raised only problems of venue. 21 Am.Jur.2d, Criminal Law § 376. It is obvious that the Superior Court has jurisdiction over charges of escape from the Maine State Prison.

■ The motion to dismiss for lack of venue was dated, filed, and dismissed on October 26, 1972, the day immediately prior to the jury waived trial. The record before us is barren of any facts advanced in support of the motion beyond the notation "Motion denied" by the presiding Justice. We must, therefore, limit our review by assuming that the well pleaded allegations in the indictment are true.

Rule 18, M.R.Crim.P., which states the basic venue provision in criminal cases, provides "in all criminal prosecutions, the trial shall be in the county in which the offense was committed, except as otherwise provided by law." See Glassman, Maine Practice, Commentary 18.1.

■ The indictment here was returned by the Knox County grand jury and plainly recited that "Thomaston, County of Knox and State of Maine," was the place where the criminal offense was committed.

On its face, therefore, venue is sufficiently alleged. State v. Warner, 237 A.2d 150, 157 (Me.1967).

■ Section 710, by its own terms, confers venue on Knox County for all violations thereunder since it directs the county attorney of Knox County to prosecute all such violations. 30 M.R.S.A. § 502 requires the several county attorneys to "prosecute to final judgment and sentence all criminal cases before the Superior Court of his county." Reading Sections 710 and 502 together removes any doubt that Knox County is the proper venue for prosecutions under Section 710.

## Point 1(c) (Duplicity)

■■ Appellant properly raised the issue of duplicity by filing the motion to dismiss. A duplicitous indictment is subject to dismissal provided a motion is seasonably filed in accordance with Rule 12(b)(2), M.R.Crim.P. State v. Dalphonse, 276 A.2d 605, 607 (Me.1971); Glassman, Maine Practice, Commentary 12.1. Appellant's position basically is that the indictment effectively charges the violation of two statutes, namely, Section 710 and 34 M.R.S.A. § 527.[4] In support of this position he urges that because the indictment alleges "did then and there wilfully and unlawfully fail to return to the Maine State Prison," it sufficiently charges a violation of Section 527. He then contends that the

tence" of a justice of the Superior Court, "which sentence was then and there in full force and effect." The waiver of this point by failure to press it on appeal is understandable since it is completely without merit. See Hamner v. State, 223 A.2d 532, 534 (Me. 1966), where language identical to that in the indictment before us was approved as meeting "all the requirements of good pleading and constitutional exaction." In any event, it is the validity of the judgment, not the mittimus, which controls the commitment and the indictment here fully and completely alleges a valid judgment. Austin v. State, 158 Me. 292, 296, 183 A.2d 515, 517 (1962).

4. 34 M.R.S.A. § 525 places responsibility on the Bureau of Corrections for the various re-

habilitative programs at the Maine State Prison, Men's Correctional Center, Women's Correctional Center, and the Juvenile Training Centers. Section 527, after authorizing the head of such institutions to permit participation by inmates in work release programs and to grant furloughs under certain conditions, provides in paragraph four:

"Any inmate or prisoner certified by the head of the institution, having custody of him, to the county attorney for the county in which the violation or escape takes place, to have violated the regulations to which he is subject, or escaped from any program or assignment outside the institution, shall be prosecuted therefor and upon conviction shall be punished by imprisonment for any term of years . . . . ."

additional language, namely, "from and out of said Maine State Prison did escape and go at large" is an effective allegation of a violation of Section 710. Thus, he urges, conjoining this language in one count results in duplicity.

In testing the duplicity argument we must *assume* the validity of paragraph four of Section 527 as an enforceable criminal statute.[5] This is true because duplicity can only result from a second criminal offense being "sufficiently averred," State v. Kerr, 117 Me. 254, 258, 103 A. 585, 587 (1918), in a single count and this obviously requires underlying support from a viable criminal statute.

 Section 527 allows the head of an institution to which an inmate has been sentenced to permit his furloughed release under certain specified conditions, provided the Bureau of Corrections has established appropriate regulations. These outside furloughs may include such activities as training and employment, visits to dying relatives, obtaining medical services or contacting prospective employers. Any indictment for "Escape from Furlough" must minimally aver an appropriate and authorized release from the penal institution for at least one of the statutory purposes and an escape therefrom. Absent such an averment, the indictment would be defective. It is clear that the language of the indictment before us in merely stating "did . . . fail to return to the Maine State Prison," fails to allege a violation of Section 527 and, therefore, cannot be said to be duplicitous. State v. Franks, 21 Okl. Crim. 213, 206 P. 258 (1922).

 We are supported in this position by the decision in Boyce v. State, 250 A.2d

200 (Me.1969). In *Boyce* the escape was alleged to have been from a crew working outside the institution but was followed by the ultimate allegation that Boyce did "out of said Reformatory for Men, escape and go at large." We there recognized "the common law principle that a prisoner who escapes while employed outside the walls of the institution of confinement is considered to have escaped from the institution." 250 A.2d at 202. Adopting this rationale, it is immaterial that at the time of the escape the inmate was engaged in an authorized, or even unauthorized activity requiring his absence from the physical confines of the institution because we reach the identical conclusion, namely, his escape was from the Maine State Prison to which he had been committed by the Court.

 If the words "did then and there wilfully and unlawfully fail to return to the Maine State Prison" were not included in the indictment, we would have no hesitancy in saying that the remaining allegations properly pleaded the elements of escape under Section 710. The indictment would meet the standards approved in Hamner v. State, 223 A.2d 532 (Me.1966). *See also* Duncan v. State, 158 Me. 265, 183 A.2d 209 (1962). Thus, since it is not duplicitous, the quoted language has no effect on the validity of the indictment and should be treated as harmless surplusage. Eaton v. State, 302 A.2d 588 (Me.1973); State v. Mihill, 299 A.2d 557 (Me.1973); Outz v. State, 154 Ga. 542, 114 S.E. 707 (1922).

We hold that the indictment is not duplicitous.

We now deal with the argument that the evidence was insufficient to prove a violation of Section 710.

---

5. As the case before us is postured, it is unnecessary for us to decide whether the quoted paragraph from Section 527 (see n. 4, *supra*) can withstand legal scrutiny. We merely note that the 1973 Legislature saw fit to repeal this paragraph and in place thereof enacted the following:

"Any inmate or prisoner who shall escape from any program or assignment outside the institution shall, upon conviction thereof, be punished by imprisonment for any term of years. He shall be prosecuted therefor in the county in which the institution to which he was sentenced is located." P.L.1973, ch. 381.

*Point 2(a)*

We have already determined herein that the venue for trial of the alleged offense is Knox County. However, appellant argues, without citation of authority, that the failure to prove the certification [6] by the warden, as required by the last sentence in Section 710, is fatal to the State's case because proof of an essential element of the crime is lacking.

Appellant misconceives the purpose of this provision. It mandates a ministerial act involving the offices of warden and county attorney and confers venue upon Knox County. It has nothing to do with the elements of the crime of escape. Therefore, the failure to prove such certificate is in no way fatal to the State's case.

*Point 2(b)*

Appellant was indicted for the crime of escape, not for failing to return to the Maine State Prison. We have already herein held that the allegation "did . . . wilfully and unlawfully fail to return to the Maine State Prison" is harmless surplusage. A fortiori, the failure to prove it cannot aid the appellant.

*Point 2(c)*

In resolving this point it will be helpful to restate the legal concept of the crime of escape. In so doing, we conceive Section 710 as not creating a new and distinct offense but, rather, as providing a specific penalty for a common law escape from the Maine State Prison. Broadly stated, "an escape is the departure of a prisoner from custody before he is discharged by due process of law." Hefler v. Hunt, 120 Me. 10, 13, 112 A. 675, 677 (1921). Inherent in this concept are three elements, (1) escape, (2) from lawful detention pursuant to lawful authority, (3)

6. The exhibits submitted in specie to us contain such a certificate but the transcript does not indicate that it was ever formally admitted in evidence although it was offered,

for a criminal offense. As was well said in Smith v. State, 145 Me. 313, 322, 75 A. 2d 538, 543 (1950) :

> "The lawfulness of the detention is the very gist of the crime of criminal escape, and the commitment by lawful authority is the very essence of the lawfulness of the detention."

The escape or departure from lawful custody need not be from physical confinement within the walls of an institution but, as we said in Boyce v. State, 250 A.2d 200, 202 (Me.1969), may be "from outside the walls," and the result is the same whether such departure be from an authorized or unauthorized assignment. *Id; see also* Chapman v. State, 250 A.2d 696 (Me.1969).

The record clearly supports the decision reached by the Justice below. The State proved each of the essential elements of the crime beyond a reasonable doubt. The voluntary departure from the custody of the prison guard in Oakland while the appellant was undergoing lawful detention pursuant to a valid sentence is, in the eyes of the law, an escape from the Maine State Prison.

*Points 3 and 5*

These issues have been resolved in our discussion under Point 2(c), *supra*.

*Point 4*

This point was not briefed nor argued and we deem it to have been waived. In any event, the claimed error, if such it was, was harmless beyond a reasonable doubt. Our comment herein under Point 2(b) is applicable.

The entry is

Appeal denied.

All Justices concurring.

the presiding Justice reserving ruling until a proper foundation for admissibility was established.